**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| ROGELIO REGALADO, | § | |
| (TDCJ # 02315237) | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIV. ACTION NO. 7:23-290 |
| | § | |
| HIDALGO COUNTY, J.E. EDDIE GUERRA, | § | |
| OFFICIALLY AND INDIVIDUAL | § | |
| CAPACITY, DISTRICT CLERK LAURA | § | |
| HINOJOSA, OFFICIALLY AND | § | |
| INDIVIDUALLY, YVETTE VIDAURRI, | § | |
| OFFICIALLY AND INDIVIDUALLY, | § | |
|     Defendants. | § | |

**REPORT AND RECOMMENDATION**

Plaintiff, Rogelio Regalado, a state prisoner proceeding *pro se*, initiated this civil action under 42 U.S.C. § 1983 against the named defendants on August 25, 2023.  (Dkt. No. 1.)[1]  In the Complaint, Plaintiff alleges a deprivation of his constitutional right and requests for monetary and injunctive relief.  On September 7, 2023, the undersigned granted Plaintiff's application to proceed *in forma pauperis* (IFP) (Dkt. No. 4).  On September 15, 2023, Plaintiff filed a declaration with supporting memorandum of law (Dkt. No. 5), and separately, filed a motion for appointment of counsel.  (Dkt. No. 6.)  On October 3, 2023, Plaintiff filed "Requesting for Leave to Amend/First Amended Complaint."  (Dkt. No. 7.)[2]  On the same day, Plaintiff submitted two additional filings, "Plaintiff's Declaration and Briefing in Support of Request for a Preliminary Injunction and/or A

---

[1] The District Court has referred this matter to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and L.R. 72.

[2] Plaintiff's request for leave to amend (Dkt. No. 7 at 1) is GRANTED by the undersigned, as further explained in Section IV of this report.  *See also infra*, p.31-37 & n.17.  The additional claims in First Amended Complaint (Dkt. No. 7) will be considered in this Report and Recommendation.

1

Temporary Restraining Order" (Dkt. No. 7-1), and "Plaintiff's Declaration and Briefing in Support

of Motion for Appointment of Counsel, or in the alternative, Notice of Intent to Appeal." (Dkt.

No. 8.) On November 20, 2023, Plaintiff filed another "Declaration in Support Plaintiff's Request

for Leave to Supplement/First Supplemental Pleading with Briefing in Support of Relief," wherein

Plaintiff seeks to add a new party and claim not related to the previous pleadings. (Dkt. No. 9.)

After careful consideration of the filings, the record, and relevant law, the undersigned

recommends that

> (1) Plaintiff's original complaint (Dkt. No. 1) and First Amended Complaint (Dkt. No. 7) be **DISMISSED** with prejudice for failure to state a claim on which relief may be granted,
> (2) Plaintiff's First Supplemental Pleading (Dkt. No. 9) be **DENIED** without prejudice, and
> (3) Plaintiff's Motion for Appointment of Counsel (Dkt. No. 6.) be **DENIED** as meritless.

The undersigned further recommends that this matter be closed out upon adoption of the

above recommendations. Finally, the undersigned recommends that due to repeated, frivolous

filings by Plaintiff as outlined within this Report and Recommendation, that Plaintiff be **BARRED**

from proceeding *in forma pauperis* in any civil action or appeal while incarcerated or detained in

any facility unless Plaintiff is under imminent danger of serious bodily injury. 28 U.S.C. §

1915(g).

## I.  **BACKGROUND**

On October 1, 2019, a Hidalgo County grand jury handed down an indictment charging

Plaintiff with burglary of habitation, second degree felony, in Case No. CR-4183-19-F, out of the

332nd District Court. That indictment was enhanced for purposes of punishment as a habitual

offender with allegations that Regalado had at least two prior felony convictions. On March 18,

2020, Regalado pled guilty in exchange for a sentence of five years' imprisonment in the Texas

Department of Criminal Justice ("TDCJ").  On November 15, 2021, Regalado was released from TDCJ prison on mandatory supervision.[3]  Regalado acknowledged that this release was subject to several statutorily mandated and special conditions, including a special condition of electronic monitoring.  (Dkt. No. 7 at 1.)  On December 9, 2021, Regalado was arrested and taken into custody at the Hidalgo County Detention Center ("HCDC") on a parole revocation warrant and new criminal charges.  (Dkt. No. 1 at 7.)

On January 10, 2022, the Texas Board of Pardons and Paroles withdrew the warrant and reinstated the supervised release on parole.  (*Id.*)  Regalado reportedly posted a bond on February 3, 2022.  Five days later, on February 8, 2022, Regalado was released after Officer Vidaurri reviewed with him the electronic monitoring program, among other special conditions and placed on him an electronic monitor.  (*Id.*)  Among the terms of the monitoring program, Regalado was required to always wear the electronic monitor and remain in his residence unless otherwise approved by the parole officer.  Regalado was also required to respond to all text messages or electronic notifications from the parole officer.  On February 12, 2022, Officer Vidaurri issued three violation reports for violations of the electronic monitoring program that occurred on February 10, 2022.  Officer Vidaurri reported that (1) GPS signals were undetectable because Regalado failed to charge the electronic monitor signal, (2) that Regalado left his residence for several hours in the early morning, and (3) that Regalado left his residence again in the afternoon. Subsequently, a warrant was issued for Regalado's arrest due to said violations.  On March 2, 2022, Regalado was arrested by the Edinburg Police Department on said warrant.  On March 17, 2022, after admission to violations and waiver of revocation hearing, Regalado's mandatory

---

[3] Under Texas law, "mandatory supervision" refers to the release of an eligible inmate from prison so that the inmate may serve the remainder of their sentence under the supervision of the pardons and paroles division of the Texas Department of Criminal Justice. Tex. Gov't Code § 508.001(5). "An inmate released to mandatory supervision is considered to be released on parole." *Id.* § 508.147(b).

supervision was revoked.  On April 6, 2022, Regalado was formally transferred to TDCJ from Hidalgo County Jail.[4]

In the original complaint and First Amended Complaint,[5] Regalado asserts a series of constitutional violations related to his short duration of detention at the HCDC, the delayed release from his parole reinstatement, and his arrest by Edinburg Police Department.

First, Plaintiff alleges that during his confinement at HCDC, he requested access to the law library but was denied, which constitutes a deprivation of his constitutional right of access to the court. (Dkt. No. 1 at 5, 6.)  Also, Plaintiff asserts that Hidalgo County Sheriff J.E. "Eddie" Guerra denied his access to courts "by carrying out a policy of not allowing me to gain access to law library at county detention center."  (*Id.* at 3.)

---

[4] The history of Regalado's state court proceedings is based on state court records provided in *Regalado v. Lumpkin* by the Office of Attorney General in representation of TDCJ officials.  No. 7:23-CV-0049, 2023 WL 6051007, at *2-3 (S.D. Tex. Aug. 18, 2023) (*see also* Dkt. Nos. 8-1, 2; 9-1 to 9-4), *report and recommendation adopted*, No. 7:23-CV-0049, 2023 WL 6049524 (S.D. Tex. Sept. 15, 2023).  In that matter, Regalado filed a writ of habeas corpus petition pursuant to § 2254 contesting conditions of mandatory supervision.  Plaintiff specifically alleged that "he was placed on the GPS tracking device even though the Parole Board order no such condition" and also made claim of due process violations as to the actual revocation proceeding and waiver of said proceeding by Regalado.  *See id.* at *3-4 (Dkt. No. 1 at *6-7).

The factual accuracy of said records are not in question; thus, the undersigned is allowed and will take judicial notice of said state court records.  Fed. R. Evid. 201(b)(2); *see also Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 589 (5th Cir. 2020); *Hernandez v. Baylor University*, 274 F. Supp. 3d 602, 605 (W.D. Tex. April 7, 2017) ("A court may take judicial notice of a document filed in another court … to establish the fact of such litigation and related filings, but generally cannot take notice of the findings of fact from other proceedings."(quoting *Ferguson v. Extraco Mortg. Co.*, 264 F. App'x. 351, 352 (5th Cir. 2007))); *Gonzalez v. Degollado*, No. 5:20-CV-30, 2021 WL 5564430, at *5 (S.D. Tex. Nov. 29, 2021) ("The Court may also take judicial notice of filings in other court proceedings, as they are matters of public record." (citations omitted)).

[5] As mentioned before, the undersigned grants Plaintiff's first request to amend. (Dkt. No. 7.)  Within the First Amended Complaint, Plaintiff provides that "I hereby incorporate by reference that the Original Complaint in its entirety" (Dkt. No. 7 at 1).  Therefore, the court takes both Plaintiff's Original Complaint and First Amended Complaint as operative complaints.  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985)).

Second, Plaintiff alleges that Hidalgo County District Clerk Laura Hinojosa violated his due process right by failing to file his state petitions and failing to notify him of "habeas corpus transmission" to the Texas Court of Criminal Appeals ("TCCA").  (*Id.* at 3, 6.)

Third, Plaintiff alleges that he was unlawfully imprisoned for five days due to the parole officer Yvette Vidaurri's "negligence and failure to perform her job duties."  (*Id.* at 3, 7.) Specifically, Plaintiff claims it constitutes an unlawful imprisonment that he was not released on parole five days after he posted bond.  (*Id.* at 7.)

Fourth, Plaintiff alleges Edinburg Police, on two occasions, wrongfully arrested and charged him for possession of a controlled substance based on discovering on his person "CBD Delta 8," which Plaintiff claims to be legal in Texas at the time of each arrest.  Plaintiff claims both arrests were due to Edinburg Police Department's unconstitutional policy to ignore the distinctions between "CBD Delta 8" and controlled substances.  (Dkt. No. 7 at 2-3.)

Fifth, Plaintiff alleges Attenti, the company providing electronic monitors for the Parole Division of TDCJ, deprived him of his civil rights through their negligence as Attenti did not properly notice Parole Division that their GPS devices would potentially malfunction, which allegedly led up to his arrest.  (Dkt. No. 7 at 2, 4.)

Pursuant to these claims, Plaintiff is seeking "Declaratory Judgment/Relief, Injunctive Relief ordering district Clerk to file my original petitions, damages (general and special) & (punitive and statutory)."  (Dkt. No. 1 at 5.)

## II.  <u>STANDARD OF REVIEW</u>

Because Plaintiff is an inmate in state prison who has been permitted to proceed *in forma pauperis* (IFP), his complaint is subject to screening under 28 U.S.C. § 1915(e)(2).  As a prisoner seeking redress from an officer or employee of a governmental entity, Plaintiff's complaint is also

subject to preliminary screening pursuant to 28 U.S.C. § 1915A; *see also Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998); 42 U.S.C. § 1997e(c).  Both sections 1915(e)(2)(B) and 1915A(b) provide for *sua sponte* dismissal.  A district court "shall dismiss" a case brought IFP at any time if the court determines the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).  An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is based on "an indisputably meritless legal theory." *Id.* at 327.

In considering whether to dismiss a complaint for failing to state a claim upon which relief may be granted, courts must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996) (internal citation omitted); *Fernandez-Montez v. Allied Pilots Association*, 987 F.2d 278 (5th Cir. 1993).[6]  "A dismissal for failure to state a claim under § 1915 is governed by Rule 12(b)(6) of the Federal Rules of Criminal Procedure." *Rocha v. Almeida*, No. 1:23-CV-102, 2023 WL 9102238, at *2 (S.D. Tex. Nov. 27, 2023).  Under that standard, a complaint fails to state claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007*); accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This judicial screening process empowers a court to "pierce the veil of Plaintiff's allegations if they are clearly baseless." *Gonzalez v. Degollado*, No. 5:20-CV-30, 2021 WL 5564430, at *5 (S.D. Tex. Nov. 29, 2021) (internal citation and quotation marks omitted).

---

[6] A district court also "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when reviewing a motion to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996).

In other words, to avoid dismissal for failure to state a claim, plaintiffs must allege facts sufficient to "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" do not suffice to state a claim upon which relief may be granted. *Id.* The Federal Rules of Civil Procedure require that each claim in a complaint includes "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It follows, that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Ashcroft*, 556 U.S. at 678 (citing Fed. R. Crim. P. 8(a)(2)).

*Pro se* complaints are liberally construed in favor of the plaintiff. *Haines v. Kerner*, 404 U.S. 519, 520–521 (1972). However, a petitioner's *pro se* status does not offer him "an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. Mbank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986). Further, "[t]he right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." *Thorn v. McGary*, 684 F. App'x 430, 433 (5th Cir. 2017) (quoting *Hulsey v. State of Tex.*, 929 F.2d 168, 171 (5th Cir. 1991) (internal citations and quotation marks omitted)).

### III. APPLICABLE LAW AND ANALYSIS

We first address the two claims in Plaintiff's First Amended Complaint: allegations of wrongful arrest by the City of Edinburg and alleged civil rights violation by Attenti. The court finds both claims are frivolous and should be dismissed with prejudice.

### a. **Claims Against Attenti**

Plaintiff claims Attenti, the company contracting with and providing electronic monitoring devices to TDCJ-Parole Division to monitor parolees, deprived him of "important civil rights" because Attenti knew that the GPS devices could malfunction, yet they did not properly provide notice of the potential malfunctions to TDCJ-Parole Division. (Dkt. No. 7 at 2, 4.)

Section 1983 of title 42 creates a cause of action against any person who, under color of law, causes another to be deprived of a federally protected constitutional right. Two elements are necessary for recovery in a § 1983 civil rights suit: (1) the plaintiff must show the defendant deprived him of a right secured by the Constitution and laws of the United States; and (2) the plaintiff must show the deprivation was committed under color of law. *Adickes v. Kress*, 398 U.S. 144, 150 (1970); *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 275 (5th Cir. 2015). "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) (internal citations and quotation marks omitted).

State contractors and their employees do not become state actors merely for the carrying out a state-sponsored program or are being compensated by the State. *Rendell–Baker v. Kohn*, 457 U.S. 830, 841 (1982) ("Acts of ... private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."); *see e.g. Jones v. Houston Cmty. Coll. Sys.*, No. CIV.A. H-10-2356, 2012 WL 3155573, at *6 (S.D. Tex. Aug. 2, 2012) (holding that providing security surveillance maintenance service to a state college campus does not convert a private company providing said service into state action justifying 1983 litigation).

8

Attenti is a private corporation.  The mere fact that Attenti provided electronic monitors to TDCJ-Parole Division to monitor parolees, without more, does not make Attenti a state actor. *Jones*, 2012 WL 3155573, at *6 (citing *Boatwright v. OMI, Inc.*, No. CIVA 5:05-CV-266 (CAR), 2006 WL 2523110, at *4 (M.D. Ga. Aug. 29, 2006)).  Therefore, Plaintiff fails to state a claim under § 1983 on which relief can be granted and said claim should be dismissed.

### b.  Claims Against City of Edinburg

Plaintiff claims an unconstitutional policy of Edinburg Police Department deprived him of constitutional rights.  (Dkt. No. 7 at 3.)  Specifically, Plaintiff asserts that the Edinburg Police Department "had a policy, custom or practice of failing to account for legal hemp (CBD-Delta 8) and omitted the fact that hemp and marijuana are indistinguishable in appearance and smell, and sold in similar forms, thereby omitted the fact that lab testing would be inconclusive without more extensive testing and chemical analysis." (*Id.*)  In support of his claim, Plaintiff provides two sets of factual allegations.

Plaintiff alleges that on or about March 2, 2022,[7] "whiling [sic] walking in a public area," he was detained by an Edinburg police officer.  (*Id.* at 2-3.)  The officer subsequently discovered that Plaintiff possessed "a manually-rolled cigarette" containing Delta-8 THC (tetrahydrocannabinol)[8], which, according to Plaintiff, was legal in Texas at that time.  (*Id.* at 3.)

---

[7] In First Amended Complaint, Plaintiff misstates the date as "March 2, 2023." (Dkt. No. 7 at 2.)  According to records of TDCJ-Parole Division, the correct date should be "March 2, 2022." *See Regalado*, No. 7:23-CV-0049, 2023 WL 6051007, at *3 (Dkt. Nos. 8-1 at 3-4, 8-2 at 17).

[8] According to the U.S. Food and Drug Administration:

Delta-8 tetrahydrocannabinol, also known as delta-8 THC, is a psychoactive substance found in the *Cannabis sativa* plant, of which marijuana and hemp are two varieties.  Delta-8 THC is one of over 100 cannabinoids produced naturally by the cannabis plant but is not found in significant amounts in the cannabis plant.  As a result, concentrated amounts of delta-8 THC are typically manufactured from hemp-derived cannabidiol (CBD).

Plaintiff also alleges this detention was in violation of his right "to be free from unlawful seizure." (*Id.*)  Plaintiff further alleges that previously on or about December 9, 2021, Edinburg Police Department charged him with possession of controlled substance containing delta 8 THC, which Plaintiff also claimed to be legal in Texas at the time of the arrest.  (*Id.*)  Based on these two incidents, Plaintiff alleges City of Edinburg is liable "due to the same policy, practice, custom" of ignoring the distinction of delta 8-THC, which he claims to be legal, and marijuana, a controlled substance.  (*Id.*)

Plaintiff's claim against City of Edinburg should be dismissed for the following reasons: (1) Plaintiff fails to state sufficient facts to raise a constitutional violation; and (2) to the extent Plaintiff attempts to claim municipal liability under § 1983, he fails to point out an official city policy as the moving force of the alleged violation.

### i.  **No Constitutional Violation**

Plaintiff fails to raise a constitutional claim because both arrests are pursuant to valid warrants.

---

It is important for consumers to be aware that delta-8 THC products have not been evaluated or approved by the FDA for safe use in any context.  They may be marketed in ways that put the public health at risk and would especially be kept out of reach of children and pets.

*5 Things to Know about Delta-8 Tetrahydrocannabinol – Delta 8 THC*, U.S. Food & Drug Admin. (May 4, 2022), https://www.fda.gov/consumers/consumer-updates/5-things-know-about-delta-8-tetrahydrocannabinol-delta-8-thc#:~:text=Here%20are%205%20things%20you%20should%20know%20about,and%20intoxicating%20effects.%20...%204%204.%205%205.

*See also FDA, FTC Warn Six Companies for Illegally Selling Copycat Food Products Containing Delta-8 THC*, U.S. Food & Drug Admin. (July 5, 2023), https://www.fda.gov/news-events/press-announcements/fda-ftc-warn-six-companies-illegally-selling-copycat-food-products-containing-delta-8-thc (noting that delta-8 THC "has psychoactive and intoxicating effects that may be dangerous to consumers and it has not been evaluated or approved by the FDA for safe use in any context, including when added to food.").

The arrest on March 2, 2022, was pursuant to a warrant for parole violation.  On February 8, 2022, Plaintiff was released on mandatory supervision subject to mandatory and special conditions.   One of the special conditions required that Plaintiff comply with the electronic monitoring program, including always wearing a GPS tracking device and remaining at his residence unless otherwise permitted leave by the parole officer.  *See Regalado v. Lumpkin*, No. 7:23-CV-0049, 2023 WL 6051007, at *2 (S.D. Tex. Aug. 18, 2023), *report and recommendation adopted*, No. 7:23-CV-0049, 2023 WL 6049524 (S.D. Tex. Sept. 15, 2023).   On February 12, 2022, it was reported that Regalado left his residence during curfew on multiple occasions, in violation of rules of the electronic monitoring program.  *See id.*, at *2 (*see also* Dkt. No. 8-2 at 13-16).  A warrant was issued for Plaintiff's arrest and executed with his arrest on March 2, 2022.

The previous arrest on December 9, 2021, was also based on a parole pre-revocation warrant issued by the Parole Division.  *See Regalado*, No. 7:23-CV-0049, 2023 WL 6051007 (Dkt. No. 8-1 at 3-4) (TDCJ-CID's record setting out arrest date).   Moreover, this arrest was contemptuously based on new criminal violations, as revealed in Plaintiff's previous § 1983 civil action filed in 2022.  *See Regalado v. City of Edinburg*, No. 7:22-CV-228, 2023 WL 2394299, at *5-6 (S.D. Tex. Feb. 1, 2023), *report and recommendation adopted*, No. 7:22-CV-228, 2023 WL 2391014 (S.D. Tex. Mar. 7, 2023).  The records provided by the State revealed that Regalado was not only arrested due to being a parole violator and being in possession of marijuana, but also for misdemeanor charge of criminal trespass.  *See id.* at *6 (Dkt. No. 3-1 at 1-3 ("Community Supervision Judgment" out of County Court-at-Law No. 2, Hidalgo County, Texas, reflecting Regalado's guilty plea to offense of criminal trespass)).[9]  Hence, the claim is contradicted by the record and fails to state facts sufficient to raise a constitutional claim under § 1983.

---

[9] *See supra* n.4 in regard to reliance on state records provided in other federal court proceedings.

For these reasons and facts, Plaintiff's allegations that City of Edinburg violated his constitutional rights in December 2021 arrest and, again, in March 2022 arrest fail because each arrest was a valid arrest that did not turn or rely on alleged use of a CBD product.

### ii.  Failure to Establish Municipal Liability

In present action, Plaintiff reframes his claim against City of Edinburg under a new legal theory, aiming at a second bite on the apple. *See Regalado*, No. 7:22-CV-228, 2023 WL 2394299, at *6. Plaintiff crafts his claim to mirror the language in *Monell v. Dep't of Social Services,* 436 U.S. 658 (1978), which provides that municipalities can only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

Having established that his arrests involved no constitutional violation, there should be no need to address *Monell* liability. However, even if considered a potential violation, Plaintiff still fails to establish municipal liability under § 1983 because Plaintiff fails to show the existence of an official policy or custom, let alone prove an official policy or custom was the moving force of constitutional violation.

The Fifth Circuit has held that actions of officers or employees of a municipality do not render a municipality liable under § 1983 unless they execute "official policy," as defined below:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984).

Plaintiff claims "[t]he Edinburg Police Department had a policy, custom or practice of failing to account for legal hemp (CBD-Delta 8) and omitted the fact that hemp and marijuana are indistinguishable in appearance and smell, and sold in similar forms, thereby omitted the fact that lab testing would be inconclusive without more extensive testing and chemical analysis." (Dkt. No. 7 at 3.)  As much as a court will take all well-pled facts as true, "[c]onclusory allegations, unwarranted factual inferences, or legal conclusions" will not be and are not accepted as true. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).  Here, Plaintiff's conclusory assertions and speculative statements cannot be accepted to show the existence of a city policy or custom. Plaintiff fails to establish municipal liability pursuant to *Monell*.

For noted reasons, Plaintiff's claim against City of Edinburg is frivolous and should be dismissed with prejudice.  We next address Plaintiff's § 1983 claims in the Original Complaint. The court finds all these claims, like the previous two, are meritless.

### c. **Plaintiff's Claims for Monetary Damages**

In the Original Complaint, Plaintiff claims that Hidalgo County Sheriff J.E. "Eddie" Guerra ("Sheriff Guerra"), Hidalgo County District Clerk Laura Hinojosa ("District Clerk"), and Parole Officer Yvette Vidaurri ("Parole Officer") deprived him of constitutional rights in their official and individual capacities, respectively, and seeks monetary and injunctive relief for damages under § 1983.  (Dkt. No. 1 at 5.)[10]  For the reasons below, his requests for monetary relief should be categorially dismissed.

---

[10] Plaintiff did not specify from which defendant(s) he is seeking monetary damages, nor did Plaintiff specify the category and the amount of monetary damage he seeks.  Nevertheless, as discussed in this section, his attempt to seek monetary damages is barred by 42 U.S.C. § 1997e(e).

As a part of the Prison Litigation Reform Act (PLRA), Congress placed a restriction on a prisoner's ability to recover compensatory damages without a showing of physical injury: "No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." 42 U.S.C. § 1997e(e).  The Fifth Circuit has held that a prisoner is generally precluded from recovering compensatory damages "for violation of federal law where no physical injury is alleged;" and "the application of [§ 1997e(e)] turns on the relief sought by a prisoner." *Mayfield v. Texas Dep't of Criminal Justice*, 529 F.3d 599, 605 (5th Cir. 2008).  "[I]t is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury." *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005).

Plaintiff, while incarcerated, is generally precluded from recovering compensatory damages without alleging physical injury.  *Mayfield*, 529 F.3d at 605.  In instant action, Plaintiff does not allege physical injury, thus his requests for recovery for compensatory damages are barred by § 1997e(e), no matter what substantive constitutional violations asserted.  *Geiger*, 404 F.3d at 375; *see also Regalado v. Mgmt. & Training Corp.*, No. 22-10034, 2023 WL 142087, at *2 (5th Cir. Jan 10, 2023) (holding that Plaintiff's claims against MTC seeking only compensatory damages, without any allegation of physical injury, are barred by 42 U.S.C. § 1997e(e)).[11]

Plaintiff also lists "punitive damages" in the relief section of the complaint.  (Dkt. No. 1 at 5.)  Different from compensatory damages, prisoners are allowed to recover punitive damages without a showing of a physical injury where they assert a violation of their constitutional rights,

---

[11] Plaintiff in this matter is the same plaintiff in the case against MTC.

*Mayfield*, 529 F.3d at 605-06; *Regalado*, 2023 WL 142087, at *2.  However, the threshold finding

of defendants' evil intent or callous indifference to the constitutional rights of others is required to

warrant punitive damages.  *See Cooper v. Morales*, 535 F. App'x 425, 432 (5th Cir. 2013).

Because the purpose of punitive damages is "to punish [the defendant] for his outrageous conduct

and to deter him and others like him from similar conduct in the future," *see* Restatement (Second)

of Torts § 908, cmt. a (1979), punitive damages are available in a proper § 1983 case only on a

requisite showing that defendants infringe plaintiff's constitutional rights with an "evil motive" or

with a "reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*,

461 U.S. 30, 56 (1983); *see also Cowart v. Erwin*, 837 F.3d 444, 455 (5th Cir. 2016) (noting that

"[a] jury may award punitive damages in a § 1983 action when an official's conduct is motived by

evil intent or demonstrates reckless or callous indifference to a person's constitutional rights."

(internal citations and quotations marks omitted)).  Because Plaintiff makes no showing regarding

any of the Defendants' evil or malicious intent or a reckless or callous indifference to his

constitutional rights, he is not entitled to punitive damage for his claims and said request should

be dismissed with prejudice.

### d.  Plaintiff's Claims for Declaratory/Injunctive Relief

Although monetary damages are barred absent physical injury, declaratory or injunctive

relief for violations of a prisoner's Constitutional rights survives the physical-injury requirement

of 42 U.S.C. § 1997e(e).  *Hutchins v. McDaniels*, 512 F.3d 193, 197 (5th Cir. 2007) (citing *Harper

v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999)).

It is well established that an injunction is an extraordinary remedy designed to preserve the

status quo during pendency of the litigation.  *Byrum v Landreth*, 566 F.3d 442, 445 (5th Cir 2009);

*City of Dallas v. Delta Air Lines Inc*, 847 F.3d 279, 285 (5th Cir 2017). A plaintiff seeking a preliminary injunction carries the burden of persuasion on all four prerequisites:

> (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). If the movant fails to prove any of the four prerequisites, a preliminary injunction may not be issued, and if issued, will be vacated on appeal. *Anderson v. Douglas & Lomason Co.*, 835 F.2d 128, 133 (5th Cir. 1988) (citing *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985)).

The decision to grant or deny a preliminary injunction is discretionary with the district court. *Enterprise Int'l*, 762 F.2d at 472. To grant such requested relief, the applicant is "to unequivocally show the need for its issuance." *Gonzalez*, 2021 WL 5564430, at *2. An injunction should not be granted as a routine matter but "only when the movant, by a clear showing, carries the burden of persuasion." *Id.* at *2 (quoting *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989)).

Despite fact that Plaintiff's requests for declaratory or injunctive relief lack specificity, the court will review the requests as to each listed defendant mindful that Plaintiff is *pro se* prisoner, whose pleadings are held to a less stringent standard than those drafted by practicing attorneys. *Haines*, 404 U.S. at 520; *see also United States v. Pena*, 122 F.3d 3,4 (5th Cir. 1997).

As an initial matter, Plaintiff sets out both official-capacity claims and individual-capacity claims for his injunctive relief requests against Sheriff Guerra, District Clerk, and Parole Officer.

(Dkt. No. 1 at 3.)  As explained below, only official-capacity claims are proper and allowable under the law.

"[A] plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, *i.e.*, his official capacity." *Community Mental Health Servs. of Belmont v. Mental Health & Recovery Bd.*, 150 F. App'x 389, 401 (6th Cir. 2005).  Government officials sued under § 1983 are unable to provide plaintiff with the injunctive relief sought as private individuals but only as government officials. *Hatfill v. Gonzales*, 519 F. Supp. 2d 13, 26 (D.D.C. 2007); *see also Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendant only for money damages and official-capacity defendants only for injunctive relief." (citing *Hafer v. Melo*, 502 U.S. 21, 30, 27 (1991)).  Accordingly, Plaintiff's requests for injunctive relief against Sheriff Guerra, District Clerk, and Parole Officer in their respective individual capacities should be dismissed for failure to state a claim upon which the relief may be granted.  *See Davidson v. United States Dep't of State*, 113 F. Supp. 3d 183, 194 (D.D.C. 2015), *aff'd*, 728 F. App'x 7 (D.C. Cir. 2018).

### i.  Claims Against Hidalgo County Sheriff J.E. "Eddie" Guerra

Plaintiff alleges that, during his detention at the HCDC, "from December 7, 2021, until February 7, 2022, and again from March 2, 2022, until April 7, 2022," he was repeatedly denied access to the law library.  (Dkt. No. 1 at 5, 6.)  Plaintiff asserts that Hidalgo County, "through its officials," refused access to law library.  (*Id.* at 3.)  Plaintiff also asserts that Sheriff Guerra denied access to law library "by carrying out a policy of not allowing me to gain access to law library at county detention center."  (*Id.*)  Upon review of the record and relevant law, Plaintiff's injunctive claims against Sheriff Guerra and, by extension, Hidalgo County, should be dismissed.

### 1. **Mootness**

In general, a case becomes moot "when the issues presented are no longer 'live' or the

parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486,

496 (1969) (internal citation omitted). Inmate's claims for declaratory and injunctive relief based

on the conditions at a facility is rendered moot upon the removal of an inmate from a prison facility,

whether by transfer or release. *See e.g.*, *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001);

*Cooper v. Sheriff, Lubbock Cnty., Tex*, 929 F.2d 1078, 1084 (5th Cir. 1991) (citing *Beck v.*

*Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988)).

If not raised by the parties, this court is obliged to raise the issue of mootness *sua sponte*.

*Bailey v. Southerland*, 821 F.2d 277, 278 (5th Cir. 1987).[12]  The record reveals that Plaintiff was

released by Hidalgo County officials to State of Texas officials to serve his sentence as of April 6,

2022. *See Regalado v. Lumpkin*, No. 7:23-CV-0049, 2023 WL 6051007 (Dkt. No. 8-1 at 4-5).

The fact that Plaintiff was transferred out of the Hidalgo County Jail has rendered moot his § 1983

claims against both Hidalgo County and Sheriff Guerra.

### 2. **No Constitutional Violation**

Even if we are to review the merits of Plaintiff's claim, there are none and should be denied.

Specifically, Plaintiff alleges that his constitutional right of "access to courts" has been denied "by

[Sheriff Guerra] carrying out a policy of not allowing me to gain access to law library at" the

HCDC. (Dkt. No. 1 at 3).

---

[12] An actual, live controversy must remain at all stages of federal court proceeding. *United States v. Clark*, 193 F.3d 845, 847 (5th Cir. 1999). "A controversy is mooted when there are no longer adverse parties with sufficient legal interests to maintain the litigation. A moot case presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents." *United States v. Lares-Meraz*, 452 F.3d 352, 354–55 (5th Cir. 2006) (quoting *Goldin v. Bartholow*, 166 F.3d 710, 717 (5th Cir. 1999)). A court must satisfy itself of said district court's jurisdiction even if the parties have not raised the issue. *Lares-Meraz*, 452 F.3d at 355; *Goldin*, 166 F.3d at 714.

As noted by the Fifth Circuit, the Supreme Court has upheld that "[t]he right of access to the courts" in a civil rights action under § 1983 "is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." *Ryland v. Shapiro*, 708 F.2d 967, 972 (5th Cir. 1983) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)). However, it should also be noted, the Supreme Court did not create an abstract, free-standing right to access a law library. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). The access to prison law libraries is "not ends in themselves," but merely "one constitutionally acceptable method to assure meaningful access to the courts." *Id.* at 351 (quoting *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). In other words, the right of access to the courts "guarantees no particular methodology but rather the conferral of a capability." *Id.* at 356. It is the capability of bringing "nonfrivolous legal claims challenging their convictions or conditions of confinement," "rather than the capability of turning pages in a law library," constitutes "the touchstone" of the right of access to the courts. *Id.* at 356-57.

The Supreme Court further explained that providing the fundamental constitutional rights to the courts –

> does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355 (emphasis in original).

Thus, the constitutional guarantee of meaningful access to the courts does not afford prisoners unlimited access to prison law libraries. *McDonald v. Steward*, 132 F.3d 225, 230-31 (5th Cir. 1998). Limitations may be placed on library access so long as regulations are "reasonably

related to legitimate penological interests." *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Such a deferential standard, the Supreme Court noted, is necessary because "prison administrators . . . , and not the courts, [are] to make the difficult judgments concerning institutional operations." *Jones v. N. Carolina Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 128 (1977).

Furthermore, an inmate alleging a violation of the constitutional right of access to the courts must meet "actual injury" requirement. *Lewis*, 518 U.S. at 349. This requirement derives ultimately from the doctrine of standing, a constitutional requisite for the court to redress the harm. *Id.* Absent actual injury, it "would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary." *Id.* at 351.

Here, to the extent that Plaintiff fails to allege actual injuries from the lack of access to law library, he fails to establish a deprivation of his right of access to the courts. His allegation does not give rise to a claim under § 1983, and therefore is meritless, and should be dismissed with prejudice.

### 3.  **Failure to Establish Municipal Liability**

An official capacity claim against local officials is merely another way of pleading the claim against the entity of which the individual official is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Burge v. Parish of St. Tammany,* 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, Plaintiff's official capacity claim against Sheriff Guerra is merely a suit against Hidalgo County. *See Bennett v. Pippin*, 74 F.3d 578, 584 (5th Cir. 1996); *see also Hick v. Bexar Cnty., Tex.*, 973 F. Supp. 653, 677 & n. 124 (W.D. Tex. June 13, 1997), *aff'd sub nom.*, 137 F.3d 1352 (5th Cir. 1998).

Plaintiff alleges that Hidalgo County, "through its official," denied his access to law library (Dkt. No. 1 at 3) and is vicariously liable "through" Sheriff Guerra's conduct. However, liability

under 42 U.S.C. § 1983 may not be imposed on a government entity on the theory of *respondeat superior* for the actions of government employees. *See Monell,* 436 U.S. at 692; *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403-04 (1997); *Johnson v. Moore*, 958 F.2d 92, 93-94 (5th Cir. 1992); *Aguilar v. Johnson*, No. A-11-CV-491-LY, 2012 WL 5398967, at *5 (W.D. Tex. Nov. 5, 2012). Therefore, this allegation should be dismissed for failure to state a claim on which relief may be granted.

Plaintiff also alleges that Sheriff Guerra denied his rights "by carrying out a policy of not allowing me to gain access to law library at county detention center," (Dkt. No. 1 at 3), thereby attempting to hold the county directly liable. To establish municipality liable under § 1983, plaintiffs must prove three factors: "[1] a policy maker; [2] an official policy; and [3] a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694-95). To the extent Plaintiff attempts to impose direct liability on Hidalgo County, he again fails to satisfy the *Monell* factors. "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)). Here, because Plaintiff provides a conclusory allegation — one that fails to state material facts or merely recites the elements of a cause of action – his claim should be dismissed for failure to state a claim. *Twombly*, 550 U.S. at 555-57; *see also supra* p.12-13.

### ii. Claims Against District Clerk Laura Hinojosa

Plaintiff claims that on or about August 4, 2022, he submitted to District Clerk an "Application for Relief from a Felony Conviction/Writ of Habeas Corpus" concerning the parole revocation, as well as an original petition against Hidalgo County complaining the conditions of

confinement at the HCDC (i.e., the denial of access to law library), together with other allegations. (Dkt. No. 1 at 6.)  Plaintiff contends that his original petition was never filed; and the application for writ of habeas corpus," though filed and transmitted to the TCCA, a copy of which was never sent to him. (*Id.*)  Plaintiff further claims that on or about July 2023, he submitted again the original petition to District Clerk, yet has not received a notice about whether it has been filed or not.  (*Id.*)  Plaintiff then reported a third unsuccessful attempt to file the same petition to the District Clerk. (*Id.*)  Plaintiff maintains that he was informed by a Hidalgo County employee there was no record showing his original petition was filed.  (*Id.* at 6-7.)  Plaintiff thus asserts District Clerk violated his right of access to the courts.  (*Id.* at 3.)

While this § 1983 complaint was pending review, Plaintiff filed "Plaintiff's Declaration and Briefing in Support of Request for a Preliminary Injunction And/or A Temporary Restraining Order" (Dkt. No. 7-1), wherein Plaintiff again claims because District Clerk "refused to file" his civil cases, he was deprived of substantive right under the Fourteenth Amendment of the United States Constitution.  (*Id.* at 2-3.)  Plaintiff claims the deprivation was "a flagrant concealment of the truth of the allegations being brought against Hidalgo County, a named defendant."  (*Id.* at 3.) Plaintiff asserts his "chances of recovering" was prejudiced by the delay of filing, "stale evidence and the fading of material facts in the minds of potential witnesses," and "probably greater expense in litigating the claim."  (*Id.*)  Plaintiff requests for an injunction and/or temporary restraining order (TRO) enjoining District Clerk "to stop refusing to file my civil petitions in the future."  (Dkt. No. 7-1 at 3.)

### 1.  Request for Mandamus Relief

Having examined the essence of Plaintiff's claim – asking the Court to compel a state-court official to perform a particular duty, his request appears to seek mandamus relief, rather than

injunctive relief. *See United States v. Santora*, 711 F.2d 41, 42 n.1 (5th Cir. 1983) (noting that the essence of a *pro se* prisoner's claims rather than the label attached should be taken into consideration); *see also Randall D. Walcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 766 (5th Cir. 2011) ("An injunction 'is a remedy to restrain the doing of injurious acts' or to require 'the undoing of injurious acts and the restoration of the status quo,' whereas 'mandamus commands the performance of a particular duty that rests on the defendant or respondent, by operation or law or because of official status.'" (quoting 42 Am. Jur. 2d Injunctions § 7)).

Although the writ of mandamus was abolished, *see* Fed. R. Civ. P. 81(b), federal courts may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law. 28 U.S.C. § 1651; *Moye v. Clerk, DeKalb Cnty. Super. Ct.*, 474 F.2d 1275, 1275-76 (5th Cir. 1973). Federal courts have jurisdiction "to compel an officer or employee of the United States or any agency thereof to perform a duty owed" to the plaintiff. 28 U.S.C. § 1361. However, federal courts have no authority to direct state courts or their judicial officers in the performance of their duties. *Hicks v. Brysch*, 989 F. Supp. 797, 811 (W.D. Tex. 1997); *LaBranche v. Becnel*, 559 F. App'x 290, 290 (5th Cir. 2014) (citing *Moye*, 474 F.2d at 1276); *Dunn v. Smith*, No. 5:22-CV-00178-H, 2022 WL 3335675, at *2 (N.D. Tex. July 20, 2022), *appeal dismissed*, No. 22-10777, 2022 WL 18673217 (5th Cir. Sept. 8, 2022). Applying this principle and acknowledging that filing documents falls within the district clerk's duty, *see* Tex. R. Civ. P. 24 ("Duty of Clerk"), the court has no authority to compel District Clerk, a state court officer, to perform her duty. *Hicks*, 989 F. Supp. at 811. This claim should be dismissed.

## 2. Request for Preliminary Injunction

Even if Plaintiff's claim is construed as a proper request for preliminary injunction and/or TRO, said request should be denied. As mentioned above, if the movant does not succeed in

carrying his burden on any one of "the four prerequisites," a preliminary injunction may not be issued. *See Callaway*, 489 F.2d at 572.  Reviewing Plaintiff's argument regarding first two prerequisites, i.e., a substantial likelihood that the movant will eventually prevail on the merits, and a showing that the movant will suffer irreparable injury unless the injunction issues, *see id.*, the court finds Plaintiff fails to prove either of them.

First, Plaintiff fails to prove that he will likely prevail on the merits.  In the motion, Plaintiff claims that he has attempted to file with the District Clerk a petition challenging conditions of confinement at the Hidalgo County Detention Center, which included, among other claims, the denial of access to law library. *See* Dkt. No. 7-1.  As discussed in previous section, the underlying claims are subject to dismissal because they are meritless, lack sufficient facts to raise a constitutional violation, and are moot.  There is no substantial likelihood Plaintiff will prevail on the merits.

Moreover, Plaintiff alleges District Clerk's delay of filing his civil cases "alone can be a constitutional violation" of his right of access to the courts.  (Dkt. No. 7-1 at 3.)  In support, Plaintiff cites *Webster v. City of Houston*,[13] where Circuit Judge Jerre S. Williams opined in dissent that "[m]ere delay alone can be a constitutional deprivation." 735 F.2d 838, 845 (5th Cir. 1984) (Williams, J., dissenting).  Significantly distinguishable from Plaintiff's case, Judge Williams articulated that the local law enforcement officers' cover-up of what led to son's death may have deprived the Webster's constitutional right of access to court.  Such concealment may have deprived the plaintiffs of their valid wrongful death claim and even if "the truth is eventually

---

[13] *Webster* involved a wrongful death claim that arose out of police officer's use of deadly, excessive force during execution of arrest. *Webster v. City of Houston*, 735 F.2d 838, 845 (5th Cir. 1984).  In *Webster*, an officer planted a "throw gun" next to the seventeen-year-old suspect/victim's body to obfuscate the facts and make the police's shooting appear justifiable. *Id.* at 842-43 (Williams, J., dissenting).

exposed, the victim's chances of recovering are prejudiced from the delay." *Id*. at 845. Whereas in Plaintiff's case, there is no similar deprivation of constitutional right.

It is clearly established that prisoners have a constitutionally protected right of access to the courts. *Lewis*, 518 U.S. at 350. However, the Supreme Court has not extended this right to "apply further than protecting the ability of an inmate to prepare a petition or complaint." *Wolff*, *Id.* at 576. To succeed on a right to access the court claim, a plaintiff "must be able to show that he suffered some cognizable legal prejudice as a result of the defendant's actions and that the defendant had the intent to interfere with the plaintiff's right to submit pleadings to the courts or was otherwise deliberately indifferent to the plaintiff's wish to do so." *Porras v. Sanchez*, No. EP-13-CV-248-KC, 2014 WL 2118085, at *8 (W.D. Tex. May 21, 2014) (citing *Eason v. Thaler*, 73 F.3d 1322, 1382 (5th Cir. 1996)). Here, Plaintiff fails to state any facts indicating District Clerk was deliberately indifferent to his right to access the courts and fails to show District Clerk intentionally interfered with his rights "to submit pleadings to the courts." *Id.* Because Plaintiff fails to show how his position as a litigant was actually prejudiced on behalf of District Clerk, the facts are insufficient to raise a constitutional violation.

Relatedly, in Plaintiff's most recent filing,[14] Plaintiff further asserts his right to access the courts is deprived when another attempt of filing a petition with the District Clerk Office failed on or about October 1, 2023. *See* Dkt. No 9 at 1-3. This claim is also meritless. According to Plaintiff, a staff member or deputy clerk from the Hidalgo County District Clerk's office notified Plaintiff that his attempted filing was unsuccessful because he failed to attach to the Original Petition a required form ("Application to Proceed Without Prepayment of Costs"); instead,

---

[14] On November 20, 2023, Plaintiff filed a "Declaration In support of Plaintiff's Request for Leave to Supplement/First Supplemental Pleading with Briefing in Support of Relief." (Dkt. No. 9.) This filing will be considered for disposition in next section. We only address the factual allegation relevant to Plaintiff's § 1983 claim against Hidalgo County District Clerk Laura Hinojosa here.

Plaintiff only attached a handwritten application. (*Id.* at 3.) Based on these allegations, the District Clerk's office denied Plaintiff's petition due to his non-compliance with the Texas filing rules, which could have been reasonably corrected by Plaintiff.

"Nothing in the constitutional right of access to the courts guarantees a litigant that he or she can file a civil lawsuit without first complying with all reasonable procedural requirements for doing so." *Hicks*, 989 F. Supp. at 822. Requiring compliance with the filing procedures does not rise to a constitutional violation of one's Due Process right to access the courts. *See id.* (holding that filing requirements contained within Chapter 14 of the Texas Civil Practice and Remedies Code, pertaining to inmate litigation, "are reasonably related to the furtherance of a legitimate state interest and do not deprive plaintiff of equal protection, due process, or his right of access to the state courts"). As noted, "one cannot obtain a preliminary injunction if he clearly will not prevail on the merits." *State of Tex. v. Seatrain Int'l, S. A.*, 518 F.2d 175, 180 (5th Cir. 1975); *see also Monumental Task Comm., Inc. v. Chao*, 678 F. App'x 250, 251 n.1 (5th Cir. 2017) (Mem). Thus, Plaintiff's request for preliminary injunction should be denied due to his failure to prove there is substantial likelihood that he will prevail on the merits.

Second, Plaintiff fails to show he will suffer immediate and irreparable harm if the preliminary injunction is not issued against the District Clerk. The main purpose of a preliminary injunction is to prevent irreparable injury "so as to preserve the court's ability to render a meaningful decision on the merits." *Callaway*, 489 F.2d at 576. Generally, falling short in proving a substantial likelihood of prevailing on the merits renders it unnecessary to consider possible "irreparable injury." *Seatrain Int'l, S. A.*, 518 F.2d at 180. ("No matter how severe and irreparable an injury one seeking a preliminary injunction may suffer in its absence, the injunction should never issue if there is no chance that the movant will eventually prevail on the merits.") Here,

even considering the "irreparable injury" element, Plaintiff fails to show the court what irreparable injury would incur absent issuance of preliminary injunction.

Plaintiff alleges harm caused by multiple unsuccessful attempts of filing civil suits with District Clerk. However, outside of citing a distinguishable proposition that delay itself may cause harm regarding denial of access to the courts, Plaintiff has not set forth any fact to demonstrate injury. "Mere speculation or conclusory allegations of irreparable injury are insufficient to entitle a movant to injunctive relief." *Hogan v. Salazar,* No. SA-19-CV-255-DAE, 2020 WL 13833090, at *3 (W.D. Tex. Feb. 24, 2020); *see also Coleman v. Bank of New York Mellon*, No. 3:12-CV-04783-M-BH, 2013 WL 1187158, at *9 (N.D. Tex. Mar. 4, 2013) ("[U]nsupported, conclusory statements, even though verified under oath, are not sufficient to show entitlement to preliminary injunctive relief."), *report and recommendation adopted*, No. 3:12-CV-04783-M-BH, 2013 WL 1189264 (N.D. Tex. Mar. 21, 2013). And, as previously noted, "courts have consistently recognized that access-to-courts claims by prisoners require some proof of an actual, concrete injury in the form of direct prejudice to the plaintiff in the pursuit of some legal claim." *Harrell v. Mayer*, No. CV 3:22-0730, 2023 WL 6465415, at *7 (M.D. Pa. Sept. 29, 2023) (collecting cases). Thus, Plaintiff's conclusory allegations of "immediate and irreparable harm" are insufficient to justify the issuance of an injunction.

Based on the above reasons, Plaintiff fails to meet his burden demonstrating two of four prerequisites for preliminary injunction, rendering his request for such relief warrantless. No further discussion is needed. *See La Union Del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, 608 F.3d 217, 225 (5th Cir. 2010). Plaintiff's request for preliminary injunction against District Clerk of Hidalgo County should be denied.

27

### 3.  No Constitutional Violation

Because Plaintiff has not set forth what, if any, harm has come to him from said alleged constitutional violations, Plaintiff fails to show prejudice.  Without showing prejudice, Plaintiff has also failed to state a § 1983 claim in regard to the District Clerk's alleged failure to file civil suits.  *Hicks*, 797 F. Supp. at 821 (citing *Lewis*, 518 U.S. at 349-354); *see also Morrison v. Gusman*, No. CIV.A. 10-217 A, 2010 WL 724173, at *5 (E.D. La. Feb. 22, 2010) ("[C]laims alleging violations of the right of access to courts are not cognizable unless the inmate's position as a litigant was prejudiced by the denial of access.") (collecting cases).  Even when reviewed with leniency for a *pro se* petitioner, Plaintiff's claims cannot survive *in forma pauperis* screening under § 1915, which provides "a complaint fails to state a claim upon which relief may be granted when it does not contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678)).  As outlined above in regard to injunctive relief, Plaintiff only provided conclusory statements.  As such, Plaintiff fails to raise sufficient facts not only for request for injunctive relief but also to establish claim of constitutional violation, thus rendering § 1983 claims against said Clerk meritless that should be dismissed with prejudice.

### iii.  Claims Against Parole Officer Yvette Vidaurri

Plaintiff's claim against Parole Officer Yvette Vidaurri arose out of his allegation that he was not released timely on parole after posting a bond.  After he was arrested and taken into custody at the HCDC on a parole revocation warrant and new criminal charges on December 9, 2021, Plaintiff reports that the Texas Board of Pardons and Paroles reinstated his supervised release on January 10, 2022.  *See Regalado*, No. 7:23-CV-0049, 2023 WL 6051007, at *2. Although he reportedly posted a bond on February 3, 2022, Plaintiff was not released until five

days later on February 8, 2022, when Parole Officer placed an electronic monitor on him.  (Dkt.

No. 1 at 7.)  Construing his *pro se* complaint liberally, Regalado alleges that he was falsely

imprisoned for five days, between February 3 and February 8, 2022, because Parole Officer

negligently failed to perform her job duties by ensuring his prompt release with the requisite

electronic monitoring device.  (*Id.* at 3, 7.)

As noted, to establish a cause of action under § 1983, a party must show that the defendant,

while acting under color of law, deprived him of "any rights, privileges, or immunities secure by

the Constitution and laws" of the United States.  42 U.S.C. § 1983.  A claim of false imprisonment

for prolonged detention under § 1983 implicates the Fourteenth Amendment Right to Due Process.

*See Baker v. McCollan*, 443 U.S. 137, 142 (1979) (interpreting the "[section] 1983 false

imprisonment action" for prolonged detention as a Fourteenth Amendment claim for deprivation

of liberty without due process).  However, a *negligent act of an official* causing unintended loss of

or injury to life, liberty, or property does not implicate the Due Process Clause.  *Daniels v.

Williams*, 474 U.S. 327, 328 (1986); *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992).  The

focus is on the Fourteenth Amendment's curb of deliberate abuses of governmental power.  *Salas*,

980 F.2d at 307.  An official may be exposed to liability under § 1983 if he deliberately ignores

exonerative evidence or fails to act upon known exculpatory information.  *Cerda v. Billingsley*,

No. SA-09-CA-816-FB, 2010 WL 11570219, at *3 (W.D. Tex. Feb. 3, 2010).  To the extent that

Plaintiff accuses Parole Officer of negligence, yet having established no deliberate deprivation of

constitutional right, he fails to state a claim that is actionable under § 1983.  *See, e.g., Daniels*, 474

U.S. at 328; *Davidson v. Cannon*, 474 U.S. 344, 347 (1986) (repeating that "lack of due care . . .

simply does not approach the sort of abusive government conduct" which rises to the level of a

constitutional violation) (internal quotation marks and citation omitted); *Neals v. Norwood*, 59

F.3d 530, 533 (5th Cir. 1995) (finding that allegations amounting to a claim of negligence were insufficient to raise a constitutional violation under § 1983).

Plaintiff's allegations further fail to establish liability for false imprisonment under Texas law.  In Texas, "false imprisonment is an intentional tort, requiring a willful detention by the defendant."  *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 511 (Tex. 2002).  To establish liability, a plaintiff must show that the defendant "clearly directed or requested" the arrest or detention of the plaintiff.  *Id.* at 507; *see Davis v. Prosperity Bank*, 383 S.W.3d 795, 799–800 (Tex. App.—Houston [14th Dist.] 2012, no pet.).  Plaintiff's claim is premised on his imprisonment for violating the conditions of his supervised release, which included the requirement that he comply with electronic monitoring.[15]  Plaintiff does not allege that Parole Officer directly confined him beyond February 3, 2022, or expressly directed or asked jail officials to detain him beyond that period of time when he might otherwise have been released.  In other words, he does not allege facts showing that Parole Officer willfully or intentionally confined him in an unlawful manner.  Even assuming that his release was delayed as the result of negligence, his allegations are insufficient to state a claim for false imprisonment.  *See Walgreens v. McKenzie*, 676 S.W.3d 170, 179-80 (Tex. App. — Houston [14th Dist.] Aug. 17, 2023, no pet.) (Texas courts have repeatedly held that, as an intentional tort, allegations of false imprisonment cannot be re-cast as a negligence

---

[15] As explained, Plaintiff was arrested on a parole revocation warrant on March 2, 2022, shortly after his release from the Hidalgo County Detention Center on February 8, 2022, for violating the terms of his release.  *See Regalado*, No. 7:23-CV-0049, 2023 WL 6051007, at *2 (*See also* Dkt. No. 8-2 at 13-20). Plaintiff's parole revocation has been upheld. *See id.* at *10.  Any claim of false imprisonment that would undermine the validity of his revocation is barred by *Heck v. Humphrey*, which prohibits such challenges in a civil rights lawsuit.  512 U.S. 477, 486-87 (1994) ("A claim for damages bearing [direct] relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." (emphasis original)); *see also Jackson v. Vannoy*, 49 F.3d 175, 177 (5th Cir. 1995) (holding that the *Heck* bar applies to revocation proceedings that call into question fact or duration of parole).

claim) (collecting cases).   Therefore, claim against Parole Officer is meritless and should be dismissed for failure to state a claim.[16]

## IV. PLAINTIFF'S SUPPLEMENTAL PLEADING

On November 20, 2023, Plaintiff filed a "Declaration In Support of Plaintiff's Request for Leave to Supplement/First Supplemental Pleading with Briefing in Support of Relief." (Dkt. No. 9).  Within this motion, Plaintiff seeks to add a claim that Securus Technologies LLP charged excessive rates for inmate calling services at HCDC, in violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act, the Federal Communications Act, "among other common law and/or statutory violations." (*Id.* at 3.)  Said claim, according to Plaintiff, was originally raised in the last petition Plaintiff was unable to file with the Hidalgo County District Clerk's Office in October 2023.  (*Id.* at 2-3.)  Plaintiff alleges that he suffered an estimated $500 in economic damages because of Securus Technologies LLP's unlawful and excessive rates.  (*Id.* at 3.)

Federal Rules of Civil Procedure 15(d) governs supplemental pleadings.  It provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).  New claims and parties may be brought in a supplemental pleading when "the subsequent allegation stem from original cause of action.  *Tomasella v. Div. of Child Support*, No. 3:20-CV-476-S-BH, 2021 WL 3710659, at *2 (N.D. Tex. Aug. 20, 2021) (citation omitted); *see Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.*,

---

[16] The Fifth Circuit has recently addressed several cases of "over-detention" in the Louisiana prison system. *See Hicks v. LeBlanc*, 81 F.4th 479, 510 (5th Cir. 2023) (observing that "problem is endemic in Louisiana, where the process for calculating release dates is so flawed (to put it kindly) that roughly one in four inmates released will have been locked up past their release dates—for a collective total of 3,000-plus years"); *see also Crittindon v. LeBlanc*, 37 F.4th 177 (5th Cir. 2022).  These cases are distinguishable from the false imprisonment claim brought by Plaintiff because he alleges no facts showing that Parole Officer knew that he was being over-detained past the expiration of his sentence but failed to intervene.

377 U.S. 218, 226-27 (1964).  Supplementation should not be allowed when a party is attempting

to present "a new and different cause of action." *Griffin*, 377 U.S. at 226-27; *see also*

*Berssenbrugge v. Luce Mfg. Co.*, 30 F. Supp. 101, 101 (W.D. Mo. 1939); *Riley v. Gomez*, No.

3:19-CV-48, 2022 WL 20439504, at *2 (N.D. W.Va. June 27, 2022) (holding that the function of

supplemental pleading is "to cover subsequently occurring but pertaining to the original cause"

(citation omitted)), *aff'd*, No. 22-6815, 2024 WL 322229 (4th Cir. Jan. 29, 2024).  Here, Plaintiff

raises a separate, distinct, new claim that was not part of his old cause of action; and no "changed

circumstance" since his initial filing warrants the granting of supplement.  Thus, Plaintiff's

supplemental pleading (Dkt. No. 9) should be denied.

As with other filings, the court examines the essence of a *pro se* prisoner's pleading, rather

than the title and erroneous citation of authority.  *See Santora*, 711 F.2d at 42 n.1.  Plaintiff's

supplement involves factual allegations occurred before the original filing of his § 1983 complaint.

"The Supplement does not refer to actions occurring after the original complaint was filed.  As a

result, it appears to be in the nature of an 'amended complaint' under Federal Rule of Civil

Procedure 15(a), rather than a 'supplemental complaint' under Rule 15(d)." *Smith v. J.P. Morgan*

*Chase Bank N/A*, No. H-10-3730, 2011 WL 11196, at *1 (S.D. Tex. Jan. 3, 2011).  Rule 15(a)

provides that leave should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2);

*Burns v. Exxon Corp.*, 158 F.3d 336, 343 (5th Cir. 1998).  In the case at hand, even if the court

liberally construes Plaintiff's motion as a Rule 15(a) amendment, *i.e.*, Plaintiff's Second

Amendment, substantial reasons still exist to deny his motion for second amendment.[17]

---

[17] Due to the recency of this filing, the review of this latest filing from Regalado is incorporated as recommendation within this report.  The Court of Appeals for the Fifth Circuit has held that a motion for leave to amend the pleadings is not dispositive under 28 U.S.C. § 636 and Federal Rules of Civil Procedure 72(a), and, therefore, a magistrate may rule on it.  *See PYCA Indus., Inc. v. Harrison Cnty. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1420-21 (5th Cir. 1996) (holding that the district court erred in certifying for interlocutory appeal magistrate judge's order denying leave to amend because such motions are non-

Rule 15(a) of the Federal Rules of Civil Procedure provides a party may amend its pleadings once as a matter of course, within 21 days after serving it, or if the pleading requires a responsive pleading, within 21 days after service of a responsive pleadings, whichever is earlier. *See* Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave [and] [t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Determining when 'justice so requires' rests within the sound discretion of the trial court." *See Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1163 (5th Cir. 1982) (citations omitted). A court's discretion is limited by the bias of Rule 15(a) favoring "granting leave to amend." *See* Fed. R. Civ. P. 15(a)(2); *see also Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981). Leave to amend should not be denied unless there is a substantial reason to do so. *Id.* at 598. However, leave to amend is never automatic. *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir. 1979). In deciding whether to grant leave to amend, a district court may consider a variety of factors, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment. *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). The district court also may consider "whether the facts underlying the amended complaint were known to the party when the original complaint was filed." *Matter of Southmark Corp.*, 88 F.3d 311, 316 (5th Cir. 1996).

---

dispositive and the order was thus not final); *see also Cambridge Toxicology Gr., Inc. v. Exnicios*, 495 F.3d 169, 177 (5th Cir. 2007) (affirming magistrate judge's order denying leave to amend and district judge's denial of the plaintiff's appeal); *Aguilar v. Tex. Dep't of Crim. Justice*, 160 F.3d 1052, 1053-54 (5th Cir. 1998) (affirming magistrate judge's order denying leave to amend where amendment would have prejudiced co-plaintiffs).

Considering Plaintiff's motive to file this second amendment, the court concludes that it amounts to a submission of bad faith and dilatory motive. "Finding bad faith requires courts to focus on the plaintiff's motives for not amending the complaint to assert the proposed new claims earlier, and occasionally, delay in itself may be evidence of bad faith sufficient to justify denial of leave to amend." *Larios v. Nike Retail Servs., Inc.*, No. 11CV1600-GPC-NLS, 2013 WL 4046680, at *3 (S.D. Cal. Aug. 9, 2013) (internal citation omitted); *see e.g.*, *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (affirming denial of leave to amend based on bad faith and dilatory motive where plaintiffs were aware of facts supporting their proposed claims before they initiated the case but did not present them until nine months after when summary judgment was imminent). Plaintiff filed his First Amended Complaint seeking to add additional claims against two new parties. *See* Dkt. No. 7. Like the proposed amendment here, the claims in the first amendment arose out of a set of operative facts unrelated to the original complaint; and all underlying facts had occurred before the original filing. Record reveals that Plaintiff had been aware of those facts before this action commenced and had even brought separate federal civil action based on the same set of factual allegations. *See Regalado v. City of Edinburg*, No. 7:22-CV-228, 2023 WL 2394299; *see also Regalado v. Lumpkin*, No. 7:23-CV-0049, 2023 WL 6051007. Regardless, the court granted Plaintiff's First Amendment pursuant to Rule 15(a) considering it was Plaintiff's first time moving for leave to amend.

Now comes Plaintiff's second attempt to add a new party advancing another new claim. This new claim not only arises out of separate transactions and occurrences from his original claims, but this proposed amendment restructures the nature of his original § 1983 action. *See* Dkt. No. 9 at 3 (seeking relief under RICO, the Federal Communications Act, and "among other common law and/or statutory violations"). This kind of amendment is subject to denial out of

concern for judicial efficiency when there is no technical obstacle for Plaintiff to bring a separate suit. *See Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992) (denying leave where the amendment "would have established an entirely new factual basis" for the claims, "radically alter[ing] the nature of the trial on the merits"); *see also Lamar v. Am. Fin. Sys. of Fulton Cnty., Inc.*, 577 F.2d 953, 954-55 (5th Cir. 1978) ("Whether a litigant should be permitted belatedly to tender an entirely new issue, never even suggested before, lies in the sound discretion of the trial court." (internal citation omitted)).

The bad faith on part of Plaintiff can be inferred from the fact that Plaintiff continuously advances new claims upon his multiple pending motions. There is no indication that Plaintiff lacked knowledge of the new allegations' underlying facts before this action commenced, or earlier in this case. Plaintiff could have brought the new claims initially, but it appears Plaintiff is rekindling his litigation for dilatory purpose. The Fifth Circuit has made clear that a "busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." *DeWolff Boberg & Assocs., Inc. v. Pethick*, No. 3:20-CV-3649-L, 2023 WL 4937406, at *5 (N.D. Tex. June 30, 2023) (quoting *Freeman v. Cont'l Gin Co.*, 381 F.2d 459, 469 (5th Cir. 1967)). "Liberality in amendment is important to assure a party a fair opportunity to present his claims and defenses, but 'equal attention should be given to the proposition that there must be an end finally to a particular litigation.'" *Freeman*, 381 F.2d at 469 (citing *Friedman v. Transamerica Corp.*, 5 F.R.D. 115, 116 (D. Del., 1946)). Plaintiff's second proposed amendment is subject to denial.

The bad faith on part of Plaintiff is also indicated in the second proposed amendment that Plaintiff attempts to backdoor claims into a federal court after his unsuccessful filing with the state court. *See* Dkt. No. 9 at 3. Accordingly, said amendment is considered to be improperly motived and subject to denial. *See Rangel v. Gonzalez Mascorro*, No. CV L-10-104, 2011 WL 13353220,

at *5 (S.D. Tex. Aug. 19, 2011) (holding that bad faith may bar amendment if the movant was aware of certain facts but failed to plead them in order to gain a tactical advantage). For the above reasons, even if the court liberally construes Plaintiff's motion as a Rule 15(a) amendment, bad faith and dilatory motive are found to deny his motion for second amendment.

Alternatively, even if no bad faith is found, Plaintiff's second amendment may be denied for the unjustifiable delay alone when the proposed amendment sought to add new parties and additional counts which could have been initially raised. *See e.g., Barrett v. Indep. Order of Foresters*, 625 F.2d 73, 75 (5th Cir. 1980). Since Plaintiff has failed to provide tenable reasons for his delay in adding the new cause of action, the court will not entertain Plaintiff's continuously unjustifiable amendment. *Matter of Southmark Corp.*, 88 F.3d at 316.

Further, Plaintiff's repeated failure to abide by Rule 15(a) also supports the denial of Plaintiff's second proposed amendment. *Drake v. Walmart Inc.*, No. 3:20-CV-581-M-BK, 2020 WL 10866997, at *3 (N.D. Tex. Oct. 19, 2020). Both of Plaintiff's proposed amendments were filed outside the statutory timeframe of amending "as a matter of course," and therefore each were required to procure the court's leave. Fed. R. Civ. P. 15(a)(1). Plaintiff, however, filed two amendments before procuring permission from the court. Even if the court liberally grants the first amendment pursuant to Fed. R. Civ. P. 15(a), Plaintiff is not allowed to abuse this benefit, and his second proposed amendment is subject to dismissal. *Drake*, 2020 WL 10866997, at *3 (citing *Truck Treads, Inc. v. Armstrong Rubber Co.*, 818 F.2d 427, 430 (5th Cir. 1987) (noting that improperly filed amendment with neither consent of the defendants nor with leave of the district court, in violation of Fed. R. Civ. P 15(a), is subject to dismissal and may be stricken from the record)).

For the reasons above, Plaintiff's supplemental pleading (Dkt. No. 9) should be denied.

## V.  MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff has requested appointment of counsel based on his indigency, *pro se* status, lack of resources because of incarceration, and unsuccessful efforts to obtain legal representation.  *See* Dkt. No. 6 ("Motion for Appointment of Counsel"); *see also* Dkt. No. 8 ("Plaintiff's Declaration and Briefing In Support of Motion for Appointment of Counsel, or in the alternative, Notice of Intent to Appeal").  Plaintiff argues that his case presents an "exceptional circumstance" for which counsel should be appointed.  (Dkt. No. 8 at 3.)  After reviewing the record and relevant law, the court concludes that Plaintiff's assertion does not satisfy the "exceptional circumstances" requirement and recommends that motion for appointment of counsel be denied.

There is no automatic right to appointment of counsel in a case proceeding under § 1983. *Jackson v. Dallas Police Dep't*, 811 F.2d 260, 261 (5th Cir. 1986).  A federal court has discretion to appoint counsel if doing so would advance the proper administration of justice.  28 U.S.C. § 1915(e)(1); *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982).  An indigent plaintiff is ineligible for appointment of counsel unless the court finds his claims meet a level of plausibility. *Naranjo v. Thompson*, 809 F.3d 793, 799 (5th Cir. 2015).  If the plaintiff's claim meets the required threshold of plausibility, counsel will only be appointed where plaintiff shows exceptional circumstances necessitating counsel.  *Dallas Police Dep't*, 811 F.2d at 261; *Delaughter v Woodall*, 909 F.3d 130, 141 (5th Cir 2018).  Such circumstances depend on the type and complexity of the case, petitioner's ability to adequately represent himself, presence of evidence requiring skill and presentation, and the likelihood that petitioner would benefit from appointment of counsel.  *Parker v. Carpenter*, 978 F.2d 190, 193 (5th Cir. 1992).

As explained in the report, Plaintiff's claims are meritless, and thus, his claims do not meet the threshold plausibility requirement to be eligible for court appointed counsel.  Even assuming

that Plaintiff alleged a plausible claim for relief, Plaintiff has shown no exceptional circumstance in his case. His § 1983 civil action is not complex, and Plaintiff has adequately represented himself through explaining factual and legal theories. He has filed multiple motions and memorandum of law in support. (Dkt. Nos. 1, 2, 5, 6, 7, 7-1, 8, 9.) Each of them includes citations to relevant statutes and case law, which demonstrates that Plaintiff fully understands the legal issues and is capable of utilizing legal authorities to develop his claims. Thus, other than pointing to his *pro se* status as an inmate without legal expertise, Plaintiff has shown no exceptional circumstance warranting the appointment of counsel.

The records reflect that Plaintiff has continuously demonstrated his ability to adequately represent himself. While in custody of HCDC and TDCJ, Plaintiff has litigated *pro se* three prior cases in federal district courts and has appealed one of them, *pro se,* to the Fifth Circuit. *See Regalado v. Mgmt. & Training Corp.*, No. 4:21-CV-185-O, 2021 WL 5824763; *Regalado v. City of Edinburg*, No. 7:22-CV-228, 2023 WL 2394299; *Regalado v. Lumpkin*, No. 7:23-CV-0049, 2023 WL 6051007.

Plaintiff has also initiated more than twenty-six filings with different levels of complexity. For example, in *Regalado v. City of Edinburg*, Plaintiff named as defendants seven municipalities and/or officials, setting out a series of constitutional violations under the Fourth, Sixth, Eighth, and Fourteenth amendments along with other causes of actions under various federal statutes. *See generally, Regalado v. City of Edinburg*, No. 7:22-CV-228, 2023 WL 2394299. Noticeably, Plaintiff filed a motion that requested class certification under Rule 23, *see id.* at *1 (Dkt. No. 32), as well as moving for remand and/or sever and remand, *id.* (Dkt. No. 35). In *Regalado v. Lumpkin*, Plaintiff drafted and filed interrogatories to the respondent and motion for production. *Regalado v. Lumpkin*, No. 7:23-CV-0049, 2023 WL 6051007 (Dkt. Nos. 12, 13, 15).

Overall, each respective filing and case illustrates that Plaintiff is more than capable of representing himself. Accordingly, there are no exceptional circumstances warranting appointment of counsel. Plaintiff's motion for appointment of counsel should be denied.

### VI. "Three-Strikes" Pursuant to 28 U.S.C. § 1915(g)

#### a. Legal Standard

An indigent litigant may proceed *in forma pauperis* (IFP) in a federal civil action without prepaying fees or paying certain expenses. *See* 28 U.S.C. § 1915(a). When applying to proceed IFP, the prisoner applicant is subject to the provisions of the Prison Litigation Reform Act (PLRA), including the three-strikes provision. 28 U.S.C. § 1915(g).

The three-strikes provision under PLRA bars prisoners from proceeding IFP in a civil action or in an appeal of a judgment in a civil action if, while incarcerated, the prisoner has had three prior actions or appeals dismissed for being frivolous or malicious or for failure to state a claim, unless "the prisoner is in imminent danger of serious physical injury." 28 U.S.C. § 1915(g); *Baños v. O'Guin*, 144 F.3d 883, 884 (5th Cir. 1998) (per curiam); *see also Payton v. Blair's Bail Bonds, Inc.*, 642 F. App'x 481, 428 (5th Cir. 2016).

A strike is issued when a prisoner's action is dismissed as frivolous, malicious, or for failure to state a claim. *Brown v. Megg*, 857 F.3d 287, 288 (5th Cir. 2017). The decision as to whether a strike applies solely depends on the basis for the dismissal. *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1724-25, 1727 (2020) (holding that the text of the PLRA's three-strikes provision offers an easy call that a dismissal of a suit for failure to state a claim does count as a strike, whether or not with prejudice).

With regard to how strikes are counted, the Supreme Court has held that § 1915 treats a dismissal in a district court as a "prior occasion" separate and apart from the appeal. *Prescott v.*

*UTMB Galveston Texas*, 73 F.4th 315, 319 (5th Cir. 2023) (citing *Coleman v. Tollefson*, 575 U.S. 532, 538 (2015)); *see also Payton*, 642 F. App'x at 482 (noting that an appeal dismissed as frivolous counts as a strike under § 1915(g)).  Habeas petitions under § 2254 are often considered something different from traditional civil actions, and thus are not counted as "civil action or proceeding" in the PLRA's three-strikes provision.  28 U.S.C. § 2254; *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997); *see also United States v. Cole*, 101 F.3d 1076, 1077 (5th Cir. 1996) ("[H]abeas proceedings are often determined to be outside the reach of the phrase civil action.").  The tradition of ready access to federal habeas relief is well-established for state prisoners and governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  In fact, Title I of the AEDPA (referencing 28 U.S.C. §§ 2244-2266 and Fed. R. App. 22), contains separate procedures for addressing abuses of the habeas process, "strongly" suggesting that Congress "did not intend the PLRA to apply to habeas petitions." *Carson*, 112 F.3d at 820.  Therefore, the Fifth Circuit concluded that "PLRA requirements do not apply to habeas petitions under § 2254." *Id*.

**b.  Plaintiff's History of Litigation within Federal Court System**[18]

Plaintiff has had at least three prior actions dismissed as frivolous, malicious, or for failure to state a claim upon which relief can be granted.  Strike one came with *Regalado v. Mgmt. & Training Corp.*, No. 4:21-CV-185-O, 2021 WL 5824763.  The district court dismissed Regalado's claims under Rule 12(b)(6).  Strike two came on appeal, the Fifth Circuit affirmed the district court's holding, and the dismissal became final.  *See Sellers v. Plattsmier*, 637 F. App'x 111, 113 (5th Cir. 2015); *Payton*, 642 F. App'x at 482.  Strike three came with *Regalado v. City of Edinburg*,

---

[18] For this review, only federal civil actions will be counted as "strikes" under 28 U.S.C. § 1915(g).  The records reveal more litigations initiated by Plaintiff: *Regalado v. South Padre Island Police Dep't*, No. 7:11-CV-00372 (S.D. Tex. Sep. 24, 2012) (closed due to voluntary dismissal); *Regalado v. County of Hidalgo, Texas*, No. 7:19-mc-02261 (S.D. Tex. Feb. 10, 2020) (closed due to voluntary dismissal); and *Regalado v. Securus Technologies*, in the 271st District Court, Jack County, Texas, Case No. 21-11-118.

No. 7:22-CV-228, 2023 WL 2394299.  The claims in this matter have been dismissed mostly because Plaintiff failed to allege sufficient facts to raise constitutional claims.  *See Lomax*, 140 S. Ct. at 1724 (concluding that under [§ 1915(g)], a prisoner accrues a strike for any action dismissed on the ground that it fails to state a claim upon which relief may be granted).  Following *Regalado v. City of Edinburg*, Plaintiff initiated a habeas corpus petition pursuant to 28 U.S.C. § 2254.  *See Regalado v. Lumpkin*, No. 7:23-CV-0049, 2023 WL 6051007.  Because the PLRA requirements do not apply to habeas petitions, *Carson*, 112 F.3d at 820, this matter does not count as a strike.

### c.  Recommendation

Turning to the instant civil action, for the reasons explained in previous sections, this action should be summarily dismissed for failure to state a claim on which relief may be granted.  Thus, it will be counted as the *fourth* strike.  Because Plaintiff is accumulating at least three strikes, Plaintiff should lose the privilege of proceeding *in forma pauperis*.  *See* 28 U.S.C. § 1915(g).  Therefore, it is recommended that Plaintiff be prevented from proceeding *in forma pauperis* in future federal civil actions or appeals unless he alleges that he is in "imminent danger of serious physical injury" at the time of filing the complaint.  28 U.S.C. § 1915(g).[19]

---

[19] It is possible that a potential litigant who is denied IFP status under this provision will not have the ability to pay the entire filing fee within the statute of limitations or, in the case of an appeal, within the time for filing an appeal, and will thereby be precluded from litigating or appealing his case on the merits.  The Fifth circuit has held the "three strike" provision of § 1915(g) constitutional in spite of this risk.  *Banos v. O'Guin*, 144 F.3d 883, 885 n.1 (5th Cir. 1998) (citing *Carson*, 112 F.3d at 821-22).

## CONCLUSION

### *Recommended Disposition*

After careful review of the record and relevant law, the undersigned recommends that Plaintiff's Complaint (Dkt. No. 1) and First Amended Complaint (Dkt. No. 7) be **DISMISSED** with prejudice, that Plaintiff's First Supplemental Pleading (Dkt. No. 9) be **DENIED,** that Plaintiff's Motion for Appointment of Counsel (Dkt. No. 6) be **DENIED**, and this matter be formally closed out.  It is further recommended that Plaintiff be **BARRED** from proceeding *in forma pauperis* in any civil action or appeal filed while Plaintiff is incarcerated or detained in any facility unless he is under danger of serious physical injury, 28 U.S.C. § 1915(g), and that an order be issued directing the Clerk of the Court to send notice of this dismissal to the Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov.

### *Warning to Plaintiff*

Plaintiff is warned that regardless of whether or not the recommendation for three-strikes bar pursuant to 28 U.S.C. § 1915(g) is approved by District Court, any frivolous, repetitive, or otherwise abusive filings may invite the imposition of additional sanctions, which may include dismissal, monetary sanctions, and further restrictions on Plaintiff's ability to file pleadings.  *See Gonzalez*, 2021 WL 5564430, at *7 (citing *Spence v. Harrison-Dunn*, No. 20-02498, 2021 WL 5409240, at *2 (5th Cir. Nov. 18, 2021)); *see also Payton*, 642 F. App'x at 482-83.

### *Notice to the Plaintiff*

The Clerk shall send copies of this Report and Recommendation to Plaintiff, who has fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure.  Failure to file written objections to the proposed findings and recommendations contained in this report within 14 days

after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings or legal conclusions accepted or adopted by the District Court, except on grounds of plain error.  *See Douglas v. United Serv. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

  **DONE** at McAllen, Texas, this 25th day of April 2024.

                   Juan F. Alanis
                United States Magistrate Judge